

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE
Concord, New Hampshire

| | | |
|---|---|---|
| JEREMY C. SOUTHGATE,<br>    Plaintiff,<br><br>    v.<br><br>KATHERINE WESTON, THE UNIVERSITY<br>OF NEW HAMPSHIRE FRANKLIN PIERCE<br>SCHOOL OF LAW, and *the known unknown*,<br>    Defendant(s). | ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____ |

# NEW CASE



June 26, 2025

*For I have sworn upon the altar of God eternal hostility against every form of tyranny over the mind of man.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE
Concord, New Hampshire

| | |
|---|---|
| JEREMY C. SOUTHGATE, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>KATHERINE WESTON, THE UNIVERSITY )<br>OF NEW HAMPSHIRE FRANKLIN PIERCE )<br>SCHOOL OF LAW, and *the known unknown*, )<br>    Defendant(s). )<br>) | Civil Action No. _____<br><br><br>**PUBLISHED JURY TRIAL DEMANDED** |

## COMPLAINT & PETITION FOR IMMEDIATE AND COMPLETE RELIEF

Plaintiff Jeremy C. Southgate hereby commences this Civil Action pursuant to U.S. Const. amends. I, II, III, IV, V, et seq., XIV; 42 U.S.C. § 1983 (deprivation of rights), § 1985 (Conspiracy to interfere with civil rights) and 18 U.S.C. § 1964 (Racketeer Influenced Corrupt Organizations) and alleges as follows:

1. This Court's jurisdiction in this matter rests on 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1343 (Civil rights and elective franchise), 28 U.S.C. § 1367(a) (supplemental jurisdiction), 18 U.S.C. §§ 1964, 1965 (RICO).

2. Venue is proper per 28 U.S.C. § 1391(b) as the events occurred in Concord, New Hampshire.

3. Plaintiff Jeremy C. Southgate was a former undergrad student at the University of Chicago, is an honors graduate of Harvard University, and is an awarded Juris Doctor graduate at University of New Hampshire School of Law, residing at 90 Rumford St., Concord, New Hampshire 03301 from July 1, 2021-2024.

\* \* \*

4. Defendant "Kathrine Weston" is believed a stranger to the Plaintiff, and Plaintiff knows nothing certain about her except her name. Upon information and belief, and only because this Defendant has voluntarily revealed this information in a court filing: This Defendant's last known residence was 44 N. Spring Street, Concord, New Hampshire 03301, and she could be found or has an agent there. This court may exercise personal jurisdiction over her because she has recently consented to and participated in such in the New Hampshire courts.

5. To the extent that "Katherine Weston" is a *known unknown* party, it is practically a 'Jane Doe' designation, although again, on information freely given by her or already public, the name also apparently identifies at least one real natural person. For the purposes of this Complaint, Plaintiff addresses the natural person who for now represents the interests of the ghost designation.

6. UNH Franklin Pierce School of Law ("UNH School of Law" or "law school") is a financially leveraged and yet ABA accredited law school in the University of New Hampshire system, which it joined due to its financial troubles.[1] UNH School of Law is situated along 2 White Street, Concord, New Hampshire 03301. UNH School of Law has been found noncompliant with ABA standards on financial resources.[2] A scandalously fired and yet tenured UNH Law Professor Ann Bartow has stated publicly: "UNH Law is bereft of basic academic freedom . . . some serious whistleblowing needs to happen." There are pictures of the deans, e.g. Carpenter and Minhas, wining and dining at a variety of global venues, traveling on school social media. There is a signpost on Blanchard St. (looking toward Rumford St., Concord) stating "UNH Law" that from a certain point of view, frames that UNH might assert an interest in the privacy of my residential apartment (LLC's oral or implied operating agreement). I sense my housemates were informants to UNH Law; in fact, one of my housemates was a student employee of a dean Berger, so implicitly subject to UNH control and influence. My house at 90 Rumford St. had 'paper thin walls', and when I inspected it upon leaving in 2024, I discovered per my expertise in music and law that the house is suspiciously built as though a musical instrument: there are sound chambers and holes to amplify sound; furthermore, the ceiling patterns (extending between the walls of commonsense "rooms") and ram-sham construction (a jutting extension of a room into my room, a closet which is also functionally a passage to another room) imply privacy violation.

---

[1] NHPR, *Facing Annual Loss, UNH Law Says Deficit is Part of Smart Strategy*, https://www.nhpr.org/nh-news/2019-10-28/facing-annual-loss-unh-law-says-deficit-is-part-of-smart-strategy (Published October 18, 2019, Accessed June 19, 2025) (". . . has been running annual deficits of millions of dollars since at least 2014 . . . . University officials say the losses are the result of a calculated strategy . . . .").

[2] ABAJOURNAL, *New Hampshire law school found noncompliant with ABA accreditation standard*, https://www.abajournal.com/web/article/u-of-new-hampshire-school-of-law-found-noncompliant-with-aba-accreditation-standard (Published March 25, 2025, Accessed June 19, 2025) (". . . school was noncompliant with Standard 202(a), a core standard . . . .").

## FACTS

7.  This Civil Action is to address a pattern of circumstances, "high tech lynching,"[3]
    not of Plaintiff's making, that have resulted in deprivations of Plaintiff's Constitutional
    Civil Rights through deceptive and false representations, false arrests, false records,
    false aspersions against Plaintiff's good fitness and character, including false light against
    "mental health" and capacity against a good man. It started on and around June 26, 2022.

8.  At all times prior to June 26, 2022, Plaintiff had a clean and strong track record.
    No criminal record. No history of mental illness. No failing grade in any final academic
    record in living memory. Plaintiff had honors grades at Harvard, benevolent recommenders
    to law school (a Massachusetts attorney wrote: ". . . clear that Jeremy has a genuine passion
    for the law. . . . he exemplifies the ideals, hard work ethic, and pragmatism that will make
    him a good lawyer. He will be a credit to your institution."), was well known for
    volunteering in his church community, and was happy.

9.  *In the days immediately prior* to June 26, 2022, at the "Intellectual Property Summer
    Institute" at the UNH law school, Plaintiff had a brief encounter with a law school classmate
    Jonathan Burroughs, who sat in the seat immediately behind me in Constitutional Law class,
    watching me intensely tabulate cases and browse Wikipedia, and I recall that Mr. Burroughs
    said he transferred in from hybrid; he mentioned "trust" in some context when we last spoke.
    Burroughs had said in class that he was the half-brother of U.S. District Judge Allison D.
    Burroughs, who was the District Judge in Plaintiff's prior litigation *Southgate d/b/a
    Sound Spark Studios v. SoundSpark, Inc., et al.*, 14-cv-13861-ADB (D. Mass.) (all rights
    reserved) and named a Defendant in *Southgate d/b/a Sound Spark Studios v. United States of
    America et al.*, 17-cv-1047-LO/MSN (E.D.Va.) (sovereign immunity waived by 15 U.S.C.
    § 1122, complaint incorporated as an exhibit by reference herein). Mr. Burroughs' extended
    public social media shows his intimate July 4th party with Hillary Clinton present while a
    Presidential candidate. My previous litigation posited a serious and researched Rule 11
    theory on why Hillary Clinton deleted over 30,000 "personal" emails on or around
    December 2014, immediately after Warner Bros. acknowledged my litigation prior to service
    in October 6-17, 2014. Plaintiff was not litigating politically, only protecting his property and
    future against predators. After litigation, Plaintiff began his next chapter: Success at Harvard.

---

3 *See* American Rhetoric Online Speech Bank, https://www.americanrhetoric.com/speeches/
clarencethomashightechlynching.htm (Accessed May 29, 2025) (Clarence Thomas Statement . . .
delivered 11 October 1991, Washington, D.C.: "I am here for my name, my family, my life, and
my integrity. I think something is dreadfully wrong with this country when any person, any
person in this free country would be subjected to this."). *See also* C-SPAN, *Senator Lindsey
Graham Condemns Treatment of Judge Kavanaugh*, https://www.c-span.org/clip/senate-
committee/senator-lindsey-graham-condemns-treatment-of-judge-kavanaugh/4751868
(Published September 27, 2018) ("Boy y'all want power, God, I hope you never get it. . . . I hope
the American people can see through this sham.").

10. On June 26, 2022: Plaintiff was exhausted, as if he had just ran a marathon. Having completed 1L at the University of New Hampshire Franklin Pierce School of Law, 2 White St., Concord, New Hampshire 03301 (the "law school"), and passed the Preliminary Bar Exam with above expected range scores in all substantive topics, Plaintiff had worked 9 consecutive days (June 10-18) both catering for the law school[4] and working a concessions stand at the U.S. Open Golf tournament in Brookline, Massachusetts, serving cold beer to huge masses of people while exposed to the elements. Family was traveling abroad, so Plaintiff was alone without social support. Plaintiff also felt the administration and students at the law school had been discriminatory and even hostile against him.[5] A 1L class friend had informed that Plaintiff was the subject of gossip; she had exclaimed "What did you do?" I answered, "I don't know." The U.S. Open job also withdrew a previously contracted work opportunity for the last day: it oddly and falsely insinuated over text message that Plaintiff had problem with demeanor, but as an independent contractor who had never met the texting offeror, they had no right to control, and Plaintiff has photo documentation of his good work and work injuries, even a draft complaint and e-mail seeking legal counsel on June 21, 2022. Plaintiff was in new shock that good work was punished and his contracts were not honored. *Compare* 42 U.S.C. § 1981(a) ("full and equal benefit of all laws and proceedings").

11. Due to exhaustion, Plaintiff 'went for a drive' and 'went for a walk' as a means of civil reflection and decompression from the intensive work experiences of the days before. *Compare* U.S. Const. amends. XIV ("liberty"), I ("peaceably to assemble"). At 10:47pm on June 26, 2022, Plaintiff remembers seeing what appears to be an illuminated Christmas tree (odd in the month of June) extremely noticeable as *illuminated* in the window an apartment in the vicinity of this, the U.S. District Court for the District of New Hampshire on Pleasant St., Concord. EXHIBIT 1. Then, Plaintiff remembers turning right onto "Federal St." and then proceeding to N. Spring St en route to his Concord residence nearby.

---

[4] The law school work supervisor wrote me a LinkedIn recommendation on June 14, 2022: ". . . Jeremy displayed leadership, organizational skills, and the ability to foresee future pain points. I look forward to working with Jeremy at the next available opportunity." However, as an adult Juris Doctor professional, and recalling the groundless disrespect of the Career Services dean (Footnote 5), I was insulted to be relegated to food service and labor work again while seeing students who didn't do their homework receive lucrative summer associate positions.

[5] In the first week of Plaintiff's 1L law school experience, UNH Dean of Career Services Neil Sirota repudiated that office's professional willingness to help, saying: "You're just a 1L. . . . You don't know anything about trademarks. . . . Keep your head down . . . ." despite Plaintiff's over 10 years of experience and expertise with trademarks *pro se* at the USPTO, a dean's scholarship financial award (limited — and my further applications were denied because of DEI), and eventual A-level grades from UNH School of Law's *Trademarks and Deceptive Practices* and *Antitrust Law* courses and sincere proffers of passion for law and collegiality when politely asking for paying work opportunities in my qualified profession.

12. N. Spring St. presented another oddity. There were two stuffed animals facing a front door of a house with a brightly lit open air porch. The stuffed animals attracted my attention and innocent curiosity, as if they were Christmas or Halloween decorations in a Starbucks lobby. Having worked as a door-to-door fundraiser, knocking on hundreds of doors after dark (Jan.-Feb.) and an Uber driver (rated 4.94/5 over 2,000 rides), where I once returned a lost phone plus wallet accessory with credit cards to a female at 11pm, and a Starbucks barista who has sat many hours 'on the front porch' cafe, I have never seen anything like this outside of Halloween and had no reason to believe that my peaceful, civil presence as a good American was harmful, since I was at the time willing to leave upon request. *See* U.S. Const. amends I, IV. *See also* Mr. Rogers (. . . testifies before the Senate . . ., 1969: "trust").

13. In reference to ¶ 12, using Artificial Intelligence (Chat GPT), I have been able to recreate substantially the impression that greeted. EXHIBIT 2, except the sign that read "Welcome to our Porch" was along the baseboard of the opposite wall closest to the street — effectively incorporating the porch as part of the street ("the Concord porch"). I had previously drawn a map for my case attorney Tom Reid, esq. EXHIBIT 3.

14. In reference to ¶ 12, Google Maps street view shows the porch in question at daytime, but its appearance was very different at night and due to the artificial enticing and/or entrapping *illuminated* display set up by Defendant Weston at night. *See* EXHIBIT 4 (front view), EXHIBIT 5 (side view).

15. In reference to ¶ 12, at the time of my presence on June 26, 2022, I read the English written signs "Welcome to our Porch" and "Liberty" as an express present license to be and do there.

16. Upon closer notice of the porch's attraction and apparent license, I could see a camera in the center window immediately adjacent to the door and attractive spectacle. *Compare* EXHIBIT 4 (the actual porch) *with* EXHIBIT 2 (illustrating the camera's position as a red glowing dot in the window, pointed toward the street). My privacy and apparent seclusion was violated.

17. Curious, and also because such information has no reasonable expectation of privacy vis-a-vis *the white pages[6]*, I briefly inquired at the mailbox: Who had set up this scene? I was alarmed. The name on an envelope said "Kathrine Weston" — and I knew a "Kathryn" from the town of "Weston" in Massachusetts that I had met via the Hinge dating app — we had

---

[6] "The white pages." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/the%20white%20pages (Accessed 29 May. 2025) ("the part of a phone book that lists the names, addresses, and phone numbers of people and businesses").

met in person in Weston, Massachusetts, and maintained a digital friendship.[7] I thought the probability of seeing such a recognizable first and last name in Concord was slim to none.

18. I've asked Artificial Intelligence (Chat GPT) to corroborate a rational basis for concern: "Is it weird that the alleged occupant of the house is 'Kathrine Weston' and the Defendant/ alleged licensee knew a Kathryn from Weston, MA? What are the odds of such on point name recognition AND the porch signs 'Welcome to our porch' and camera AND a mail piece that says 'Please take this mail' when the addressee of the mail piece says it's already delivered to address (is not addressed as outgoing mail)." Chat GPT confirms a likelihood of alarm for Plaintiff: "That's not weird — that's **alarming**, and from a legal perspective, this constellation of facts suggests **intentional orchestration**, not coincidence."

19. Kathryn from Weston is a familial relative — great grandfather famous musical conductor Leopold Stokowski married Gloria Vanderbilt who was the mother — of Anderson Cooper (employed at CNN), who has famously known Central Intelligence Agency ("CIA")[8] ties.[9] She also personally knows my former seventh and eighth grade Latin teacher (*whom I trust*), as they both concurrently attended the all female Winsor School in Boston, Massachusetts.

20. Moreover, on June 26, 2022, a note on an envelope said "Please take this mail . . ." as an apparent license to temporarily possess the mailpiece as a trustee. What I saw both befuddled and alarmed me. I observed, peacefully, simply wanting to understand my environment, put a

---

[7] And Kathryn had mentioned in a December 2020 phone call that she was upset that I had voted for Trump; she said, "So you did vote for Trump?" and then following my attempt to explain how I was a moderate who had also once been a fan of Obama in 2008, she said "I just can't . . ." (implied in a tone of disbelief: be associated with that). Two of my law school housemates had a similar reaction after discovering my franchise rights after a specific Legal Profession course talk, and they subsequently gave me the silent treatment. After a lifelong neighbor of mine passed away (Vietnam veteran, father of Newton policeman and an army purple heart medic, my childhood babysitter) whom I knew since I was 3 years old, I cried — these two "future lawyers" noticed my tears and proceeded to talk about how well they did in midterms in knowing earshot.

[8] With respect to CIA, it is true that I was trained as an Intelligence Analyst at a University of Chicago event on September 30, 2010, and I spent a month in Washington, D.C., studying our national government after departing the university in January 2011. On June 1, 2021, Plaintiff Jeremy Southgate had made further application for employment with Central Intelligence Agency. Intelligence "sources and methods" are privileged. *See, e.g.* 50 U.S.C. § 3507.

[9] I also have a photo from my Harvard Commencement in May 2021 where I saw the former CEO of CNN Jeff Zucker sitting 6 rows ahead of me, and I believe on my present sense impression: he recognized and was looking at me directly, because my former lawsuits implicated Warner Bros. which was affiliated with CNN via a common parent company or other executive relationships.

name to a face, and understand why these things were happening to me. I had learned as a door-to-door fundraiser that a visual cue (pointing to a name on an envelope as clipboard) is an effective way to garner focus on a topic when cold calling, here, the identity of "Katherine Weston" (mailbox stated: "Joyal, Karen Weston, Katherine Weston, Elizabeth") or "Kathryn Elizabeth . . ." from Weston, unknown, at an apparent "open house" porch. *See* EXHIBIT 6, the only porch picture I have, because it is public White Pages information.

21. If the probability of matching a first and last name (from the general population) is ~1 in 5,000, and the probability of porch signage + bait + open lighted surveillance is ~1 in 200, then the joint probability of those coinciding purely by accident is 1 in 1,000,000. Therefore, by appearance: Katherine Weston intentionally staged a baited trap on a quasi-public porch and called 911 to arrest and deprive Plaintiff of rights under color of law of the said false criminal suspicions directed toward Plaintiff. When police approached, Plaintiff correctly stated his property right of seclusion: "I'm on my porch." Plaintiff did not say that it was his house at that time, nor did Plaintiff seek to enter, nor did Plaintiff seek to cause any harm, nor did Plaintiff actually cause any legally cognizable harm.

22. In reference to ¶ 21, the conspiracy thus became active when Katherine Weston acted to subject Plaintiff to false criminal suspicions, and the purpose of this enterprise has been, paralleled at the University of New Hampshire Franklin Pierce School of Law affecting interstate commerce, *to defame and frame* the Plaintiff as "repeating malicious acts against women." *Compare* Clarence Thomas, Brett Kavanaugh *with* Jeremy Southgate, *Head of Spark. See also* the definition of "honeypot."

### CLAIMS FOR RELIEF

### I
### N.H. R.S.A. 633:3-a Stalking

23. The allegations of the foregoing paragraphs are incorporated by reference herein.

24. In view of the foregoing, Plaintiff is the actual victim of stalking and stalking conspiracy. There was no reason to expect a known associate Kathryn from Weston in the city of Plaintiff's law school and proximate residence. ¶ 17. No reason to expect surveillance at my initial secluded presence at an open house attraction. ¶¶ 16, 18 ("camera").

25. Defendant(s) knowingly, voluntarily, intelligently created a scene for open house attraction of innocent curiosity which was intended to target, alarm and distress the Plaintiff with surveillance of an unusual and unexpected compromising situation she willfully created and then prosecution and defamation while Plaintiff was already under unique intensive work stressors, orchestrated by third-parties, unknowingly and involuntarily for Plaintiff. ¶¶ 12-17.

7

26. Through Defendant(s)'s course of conduct, Plaintiff has feared for personal safety, namely: interference with business reputation, crimes of dishonesty alleged against law career character and fitness, negative earnings capacity, and general distress from persecution.

27. Re: ¶ 23, Defendant Weston personally appeared on July 28, 2022, to seek deprivations of Plaintiff's rights, threatening his safety, and while the court documented "The Parties Do Not Know each other" she persisted with malicious determination to put Plaintiff in fear. Defendant intentionally exhibited express license "Welcome to our Porch" and "Liberty" and then she falsely stated to the court that he "targeted . . . randomly and tried to break in . . . ."

28. In reference to ¶ 23, Defendant Weston again repeatedly "request[ed] . . . to appear in court telephonically" (so as not to be identified) on August 14, 2023, to seek deprivations of Plaintiff's rights, threatening his safety, and while police documented *general license* ". . . an orange magnetic clip document holder with pink paper attached. The paper said, 'Please take mail in mailbox thank you!!.'," the Defendant falsely stated to the court that Plaintiff had been ". . . stealing . . . medical records from the mailbox . . . ." *See also* ¶ 20. The mail was never even opened (so contents unknown), and it was not removed from the premises; in fact, it was intended to be delivered immediately by a good agent! *Address Service Requested. See* USPS, *Special Address Services (Ancillary Service Endorsements)*, https://pe.usps.com/BusinessMail101?ViewName=SpecialAddressingServices.

29. Plaintiff had been so alarmed by this scene. ¶¶ 17-18. And, Plaintiff also recalls hearing a phone call from family that was traveling abroad on a cruise of Norway that presented a scuffling noise then sudden hangup in the days around that time, among possible other oddities in valid memory.

## II
## 42 U.S.C. § 1983 Civil action for deprivation of rights

30. The allegations of the foregoing paragraphs are incorporated by reference herein.

31. As can be shown by evidence, the Defendant(s) has caused deprivation of Plaintiff's rights, among others, of speech, press, religion, peaceable assembly, right to bear arms, liberty, and property, as damages have been incurred, and even life itself — the pursuit of happiness — as a result of the following:

### 1L: First Deprivation of Rights under Color of Law

32. **Deprivation of Liberty.** As a result of the aforementioned oddities after my good faith efforts of hard work in 1L and in 1L Summer, in the hours between May 26 and May 27, 2022, I was suddenly arrested and deprived of liberty by Concord Police Department for false charges of loitering and theft of property (the mailpiece) and civil charges of stalking. *Katherine Weston v. Jeremy Southgate*, 429-2022-CV-00166 (N.H. Circuit Court); *State of*

*New Hampshire v. Jeremy Southgate*, 429-2022-CR-01982 (N.H. Circuit Court). I was imprisoned overnight in "protective custody" and I read a "0.0" on a Blood Alcohol Level test and shook the hand of Officer Foster on leaving but refused the offered ride in an unsafe vehicle that smelled of marijuana. These charges were ultimately dismissed with prejudice in my favor. Despite express license, I pled to a violation trespass under duress from threat of criminal investigation and only to mitigate because a violation is not a crime per New Hampshire law — a common parking ticket is trespass, and legally more on point. Nevertheless, I experienced damaging expenses and distress from these events directly and indirectly as a result of adversarially toned scrutiny from the state administration of my state law school: a hostile work environment. UNH law school deans repeatedly summoned me to unnecessary, unwanted adversarial meetings thenceforward; UNH law school police sergeant John McLennan meanly said, "I can see this happening a lot in your future."

33. **Deprivation of Life.** As a result of the aforementioned, I was deprived of professional dignity, esteem, and reputational good standing in a profession where ethics are important for my future career. I was deprived of even beneficial associations and social opportunities due to rumor at the law school, where I had previously enjoyed a more gregarious presence and feeling of cohort. On April 6, 2022, I had enjoyed a coffeehouse discussion with two female classmates, but now I wonder if they were only seeking information to use against me; I recall one of these two had laughed disparagingly when I was disrupted by the student activist against whose disruption I critically commented and was censored by UNH. ¶ 42.

34. **Deprivation of Property.** As a result of the aforementioned, the costs and lost earnings opportunities due to defamation of character have violated my business plan of going to law school in order to launch a career and earn income through honest work, frustrated by a *"rigged system."*

35. **Deprivation of Due Process.** Plaintiff was physically and mentally secluded on the Concord porch, seeking to harm no one, known or unknown, so Plaintiff enacted no mischief but only reflex and reaction to an intentionally artificial scene. Accordingly, the process due to the Plaintiff was freedom, good standing, and truth, and that was deprived, even when Plaintiff stated to the police: "I don't think I've done anything wrong, and I'd like to be free to go."

36. **Deprivation of Free Speech and Press.** By alleged "Order of Protection" I was deprived of my rights to free speech by "telephone, letters, fax, e-mail," etc. By implied state coercion, I have suffered trespass to my right of principled and free expression and advocacy as well as trespass to my right of free press as a private American attorney general informant.

37. **Deprivation of Peaceable Assembly.** By alleged "Order of Protection" I was deprived of my rights to peaceable assembly "from coming within 500 feet of" a person whose identity I was and remain unsure of. I was ordered to fear a ghost. I felt intimidated in exercising my right to vote in Concord, New Hampshire, on November 8, 2022, and expressing affiliation.

38. **Deprivation of the Right to Bear Arms.** By alleged "Order of Protection" I was deprived of my rights to bear arms in a free state as opposed to an unfree and coercive state where one "is prohibited from purchasing or obtaining any firearms or ammunition[.]"

39. Extensive and ongoing damages resulted from Defendant(s)'s creation of a compromising situation to entrap the Plaintiff and wrongfully subject him to criminal liability from the state under color of law. ¶¶ 12-18 et seq.

### III
### 42 U.S.C. § 1985 Conspiracy to interfere with civil rights

40. The allegations of the foregoing paragraphs are incorporated by reference herein.

2L: Second Deprivation of Rights under Color of Law

41. During my 2L year of law school, I maintained the maximum course load of 17 credits in both fall and spring semesters, and I commuted 1 hour and 30 minutes per stretch every weekend to be with my first serious girlfriend **Caroline Flessa**[10] — "in a word, . . . seeking and obtaining happiness." N.H. Const. art. 2 (Natural Rights). I achieved seven A-level grades in my 2L. Nevertheless, my hard work and accomplishment (a property right) was deprived and punished with an allegation of criminal harassment by my girlfriend, whose purposeful bipolar, intentional repeated hot and cold behavior repeated throughout my 2L and is clearly evidenced by the history of text messages, which my attorney has. *Caroline Flessa v. Jeremy Southgate*, Docket No. 2387-RO-046 (Framingham District Court); *Natick Police Department v. Jeremy C. Southgate*, Docket No. 2387AC000555 (Framingham District Court). Caroline's friend Liz Mahon has a PhD in psychology and I am concerned she had ulterior motives to conspire with others to destabilize me with professional skill[11]; this friend Mahon (Harvard '16) sent me a mocking text message about Harvard debauchery, including a man, a wealthy Harvard Z-lister (on Facebook: picture of him in a private jet as a child; galavanting with women in at Harvard/Las Vegas; titling himself "#wolfofwallst"), I knew intimately from my private high school in Brookline, Massachusetts — in those years, I spent after school hours alone with homework and one grandmother, vacations in Germany along with being alone with another grandmother, and all three of my letters of recommendations to college were from women; my first full-time employers were women.

42. **Deprivation of Liberty.** As a result of the aforementioned harassment allegations from an intimate parter I had worked hard to please, I was subjected to criminal prosecution initial

---

[10] Thoughts and impressions on her actual identity reserved.

[11] Elizabeth Mahon, *Voice Biomarkers as Indicators of Cognitive Changes in Middle and Later Adulthood,* https://pmc.ncbi.nlm.nih.gov/articles/PMC9487188/ (accessed June 11, 2025) (showing that Mahon studied "risk factors for cognitive impairment"). *Compare MKUltra.*

phase for "harassment" — dismissed for lack of probable cause — but I have been forced to be preoccupied with my defense amidst a specter of interstate repeated hostility. Concurrently with Caroline's harassing allegations under color of law, the University of New Hampshire ("UNH") alleged a "Mutual No Contact Directive" between me and a female activist student Ronelle Tshiela about whom UNH cited "numerous reports filed" after I commented civilly[12] on a public forum on May 2, 2022, that documents an adversarial conspiracy of, by, and for her activist friends[13]; UNH conferred an "award" on Tshiela as flagrant viewpoint discrimination.[14] Because their pattern defies probability of coincidence, it is reasonable to assume Caroline and even Kathryn and/or Kathrine communicated with UNH activist students in the UNH groups: "WLSA" and "Lambda" and "Young Dem...s[.]"

43. **Deprivation of Life.** As a result of the aforementioned, at law school exam time, I was deprived of beneficial association and society with an intimate partner of 8 months, which I calculated unjustly enriched her ($2,500 or more — like grand larceny) and upon whose trust I detrimentally relied in good faith. I do not wonder that now know she was only seeking information to use against me, because she wrote in a "public record" affidavit to the Framingham court as fraud: "*I . . . have documented* numerous harassment/Stalking incidents . . . a known record of harassing/stalking women. *Documentation* available upon request. . . . I had to take time away from my job + *coordinate . . . . I also put time/energy into* preparation . . . . I truly hope the act of getting this order will communicate to Jeremy the seriousness of this situation + how he needs to stop repeating malicious acts against women." (Dated June 26, 2023, *emphasis added.*) *Compare* ¶¶ 33, 41, 42. This evidences Caroline's job was plotting conspiracy. I want to know: Did she travel to Geneva instead of Lyon? — international banking hubs. *See* United Nations Universal Decl. Human Rights, Art. XVII.

---

[12] UNH blocked my following comment on Facebook, a public forum: "Ronelle age 23 once interrupted my group work in class saying 'Jeremy, You're not the teacher!' . . . in my opinion, not a 'trailblazer.'" UNH justified this unlawful censorship and corrupt favoritism, saying: ". . . commentary drifted from the post's designated topic . . . ." The state rigged public advancement.

[13] **Ronelle Tshiela** admitted her disruptive conduct in furtherance of conspiracy: "I sure did! You don't respect women or your classmates. . . ." Ronelle's friend **AhLana Ames** added conspiracy: ". . . almost every woman at this school has a story about him being demeaning or belittling[.]" **AhLana Ames** further showed how Plaintiff was retaliated against for exercising constitutional rights of speech and commentary: ". . . you decided to comment on a public post! . . . Any backlash you have received is because you decided to publicly air your so-called grievances." **Kat Welch** added intonations of institutional censorship by the public state: "very immature and unprofessional to post this comment on the official UNH law Facebook page where your hateful and uneducated view can be seen . . . ."

[14] In my formal response to the UNH "Civil Rights and Equity Office" I mentioned: ". . . you, a Public University, express favoritism by your posts promoting your 'proud' 'support' for Ronelle and now backhanded, inquisitorial censorship of me." UNH ignored my request for trust remedy.

44. **Deprivation of Property.** As a result of the aforementioned, the costs and lost earnings opportunities due to specific defamation of character and causing general distress have violated my specific business plan and contract, with implied covenant of good faith and fair dealing, filed with the school when I applied, of going to law school in order to launch a entertainment business and law career and earn income through honest work. I fear that UNH is self-dealing[15]; their dean has had meetings throughout the globe, and I had an AAA arbitration for an early June 2022 breach of contract ($25,000, my expected summer funding, offered for an internet domain) from a Shanghai entity that could possibly be a UNH agent.

45. **Deprivation of Due Process.** Plaintiff sought to harm no one, especially someone he had sought to please as an intimate girlfriend, who physically closed the door on Plaintiff but never uttered English words articulating intent to breakup. Plaintiff enacted no mischief but only reflex reaction to a surprise lack of information. On information and belief: The lack of information provided to Plaintiff was intentional by Caroline. Accordingly, the process due to the Plaintiff was freedom, good standing, and truth, not being implied "untouchable" in social status or caste, especially in a Catholic christian community, and that was deprived.

46. **Deprivation of Free Speech and Press.** By alleged "No Contact Directive" UNH, a state agency, moved to deprive me of my rights to free speech by "telephone, letters, fax, e-mail," etc. UNH also specifically blocked my public speech on a Facebook post, in violation of my First Amendment rights and in discrimination against my Fourteenth Amendment rights to equal protection of the laws and in favor of their activist students. Then again, by alleged state "Order of Protection" I was deprived of my rights to free speech by "telephone, letters, fax, e-mail," etc. By implied state coercion, I have suffered trespass to my right of principled free expression and advocacy as well as trespass against my right to press investigation.

47. **Deprivation of Peaceable Assembly.** By alleged "Order of Protection" I was deprived of my rights to peaceable assembly "to stay at least 100 yards from" a person who previously represented to me that she was civilly trustworthy but whose identity I am now even unsure of because of her dishonesty. I've been civilly forthright by all names, at all times and places.

48. **Deprivation of the Right to Bear Arms.** By alleged "Order of Protection" I was deprived of my rights to bear arms in a free state as opposed to an unfree and coercive state where one is prohibited from purchasing or possessing any firearms or ammunition.

---

[15] On June 15, 2023, UNH School of Law disseminated via e-mail: "Dean Carpenter & the Career Services Office are pleased to announce a collaboration between the Intellectual Property Owners (IPO) and UNH Franklin Pierce School of Law." I wrote back to opt out of the school's unilateral characterization of *the* "Intellectual Property Owners" because it implied generality to which I have not given consideration. *Compare* United Nations Universal Declaration of Human Rights, Arts. 17, 20 ("Everyone has the right to own property alone as well as in association . . . . No one may be compelled to belong to an association.").

49. **Deprivation of Religion.** By alleged "Order of Protection" I was deprived of my right to exercise religion and enjoy religious society, despite the fact that I was baptized in Framingham in the universal Catholic Church and still have my baptismal candle from St. Bridget's. The court purported to order me "not to attend the 11:00AM Sunday Mass at St. Patrick Church in Natick" — an impossible order that I most certainly violated in spirit. Physically, it was unconstitutional deprivation of my right to Communion from the Roman Catholic Church — a specific rite that I had journeyed to receive where I most needed it.

3L: Third Deprivation of Rights under Color of Law

50. During my 3L, my law school grades had suffered as a result of the false allegations of the aforementioned women and/or due to conspiracy within UNH law school.[16] The law school has sent circular emails saying that LGBTQ flags are their biased "university speech" — and two professors with LGBTQ flags on their office doors gave me "F" grades for the first time in my life — and this after one of these professors gave me a grade of "A-" in Securities Regulation, which I consider to have been the most theoretically difficult area of law I have encountered, and that same professor had joined a protest walkout with the Lambda/LGBTQ activist students in my presence and was their advisor. Yet, that "professor" complemented my good writing as did a Professor/Justice of the New Hampshire Supreme Court.

51. My own assigned advisor Sophie Sparrow wrote an opinion piece: "Lawyers working in this administration would earn failing grades if they were our students."[17] I receive this comment[18] as intoning a direct admission of repudiation and overt breach of trust, because I am a lawyer working in favor of the elected Trump presidency and administration, and the underhanded "failing" grades therefore appear publicly admitted to be willful discrimination against differing political viewpoints and their underlying characteristics: gifted industrious

---

[16] The Dean of the law school and my advisor Sparrow has made financial political contributions to Biden for President, and Joseph Biden (Defendant in *Southgate v. United States of America et al.* due to unauthorized use of Plaintiff's heraldic marque / trademark property (sovereign immunity waived by U.S. 15 U.S.C. § 1122)) has signed an autograph on a wall of the UNH law school, and Biden White House Counsel and campaign advisors have been UNH visitors.

[17] New Hampshire Bulletin, https://newhampshirebulletin.com/2025/04/04/as-some-lawyers-make-a-mockery-of-their-oath-the-rest-will-fight-for-the-rule-of-law/ (Published April 4, 2025, Accessed May 29, 2025).

[18] The UNH In House Counsel Danette Wineberg mentioned knowing "Allison Burroughs" of "Nutter" law firm in the same course where "FU Fund" was mentioned circa March 29, 2023. Wineberg also oddly stated in writing that she was unfamiliar with UNH's own internal rules as I sought my right to appeal a demonstrably arbitrary and capricious grading process.

13

straight white republican male of American and German ethnicity (blonde hair, blue eyes — no different from cornrows and blue tinted glasses in terms of racial characteristics).[19]

52. During my 3L, I met a new woman who to date remains my great romantic partner. She works for the Massachusetts Trial Court, and I have met her supervising judge and seen the Trial Court emblem around our household in addition to other observables. Nevertheless, she put me in a compromising situation which resulted in my being unlawfully arrested for impossible trespass on December 1, 2024, where I was found "Not Guilty" — and then second resultant arrest for alleged assault and battery against my elderly father, who has a history of mental illness (his wife and employers abused him, as I directly witnessed) was emotional and reacting irrationally about the first arrest that week that *he didn't understand, and therefore, he panicked and falsely reported egregious mistruths* disturbing the peace with his misinformed, fighting words and actions. *Kaitlin Murray v. Jeremy Southgate*, Docket No. 2459RO-470 (Plymouth District Court), *Commonwealth of Massachusetts v. Jeremy Southgate*, 2406-CR-001086 (Plymouth District Court), transferred to Boston Municipal Court), *Commonwealth of Massachusetts v. Jeremy Southgate*, 2449-CR-002126 (Framingham District Court). I acted only according to my advanced understanding of law, and I was within my sovereign rights. These legal actions wrongfully and harmfully interfered with my ability to work, earn; they are unconstitutional takings and deprivations.

53. As a result of the two arrests following December 1, 2024, and in light of the unilateral history and only ex parte, anti-me theories available to the courts, I was wrongly deemed to be "dangerous" and wrongly purportedly involuntarily committed for over 30 days under color of law. *Under seal* (Framingham District Court). The deprivation of my liberty interfered with the religious holiday of Advent, the death and bereavement of my close aunt, my birthday, Christmas, New Year, the religious holiday of Epiphany, and generally harmed my private business and finances — and most importantly, it harmed my relationships with a negative stigma, and then seeks to take my money for it. Coerced medication is the modern quartering of soldiers in peacetime.[20] U.S. Const. amend. III. The harms imposed by the abusive state are ongoing, so I condemn the actions of the state courts as being unconstitutional actions and also a violation of international human rights conventions. "Everyone has the right to own property alone as well as in association with others.

---

[19] A tenured UNH Law Professor Ann Bartow was fired in the middle of my 1L Semester torts course, causing great disruption; she writes: "UNH Law is bereft of basic academic freedom . . . some serious whistleblowing needs to happen." LinkedIn, https://www.linkedin.com/in/ann-bartow-8078862a2/ (Accessed June 16, 2025). Prof. Bartow also writes: "Sophie 'Speech Code' Sparrow. She spearheaded an initiative to impose a speech code on the faculty called 'community values' under which criticism of the Dean or her dwindling passle of sycophants would be actionable and offenders were to be disciplined. She reportedly assisted previous Deans in keeping the number of other tenured women on the faculty as small as possible. . . ." *Id.*

[20] U.S. Geo. Survey employee and JAG were quartered at UNH. I saw military flags at quarters.

No one shall be arbitrarily deprived of his property." United Nations Universal Declaration of Human Rights, Art. XVII. U.S. Const. amend. V, XIV. *See also generally* U.S. Decl. Ind.

4L: Realizing Impact from a *Fourth* Deprivation of Rights under Color of Law

54. In February 2013, I had been allegedly arrested and it was reported that "Jeremy C. Southgate . . . West Newton Charged With Assaulting Mother In Sudbury[.]"[21] *Commonwealth of Massachusetts v. Jeremy Southgate*, 1349-CR-0825 (Framingham District Court). My Kathryn from Weston friend had mentioned via text message that this harmed her esteem of me. To this and to the Court I say: **"I AM THE VICTIM. MOTHER ACTUALLY ASSAULTED AND BATTERED ME. I HAVE WITNESSED HER EXTENSIVE HARASSMENTS."** when she spontaneously and without provocation physically ripped keys hanging off my belt, keys which protected my earned music studio property (~$55,000 at that time) and which I immediately needed to leave and drive away home, and then she hid a chardonnay bottle under a table while police approached — to the manifest injury of my life by reputational and color of law deprivations. *Compare Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex. 1967). I never caused any harm or abuse; rather, the state has been unconstitutionally abusive against me because it promoted falsity. *See also* "ItsOnUS" (*Southgate v. United States of America et al. vis-a-vis* 2015 Grammys).

55. On information and belief, likely to be further substantiated with discovery, Defendant(s) conspired with state actors (Burroughs, and/or UNH, the state) to cause Plaintiff's wrongful arrest and wrongful subjection to defamation. They have sought to put Plaintiff's valuable human capabilities (Human Rights), basic livelihood and promising career, good standing in the legal profession and academia and even the home, and even legal capacity into jeopardy — depriving Plaintiff's property, liberty, and life itself.

## IV
## Common Law Intrusion upon Seclusion

56. The allegations of the foregoing paragraphs are incorporated by reference herein.

57. Plaintiff was physically and mentally secluded on the Concord porch, seeking to harm no one, known or unknown. Plaintiff had announced his presence and saw no signs of life, no indications of third-party presence whatsoever but saw only express license to remain i.e. "Welcome to our Porch." ¶ 15.

58. After creating prejudicial effect for Plaintiff, Defendant(s) caused police to be their agent to intrude on Plaintiff's privacy, disclose private facts about his identity and recent experiences, and publicity which harmed Plaintiff's standing at school and in the greater community.

---

[21] Patch.com, https://patch.com/massachusetts/sudbury/west-newton-man-charged-with-assaulting-mother-in-sudbury (Published April 15, 2013, Accessed May 29, 2025).

¶¶ 25-31. Defendant Weston admits "a bench warrant has been issued for his arrest" as she recklessly has wished to deprive Plaintiff of familial ties and benefits of German multiple citizenship; Plaintiff was intrusively questioned at Logan Airport in Summer 2022 (and would be met by two policemen before boarding again in Summer 2023, and German federal police were called by a former female friend in Germany) on return from Germany at Border & Customs and advised of "full faith and credit" of New Hampshire orders — the same "full faith and credit" given to falsities in which Plaintiff considers the acts of the U.S. District Court for the District of Massachusetts in *Southgate v. SoundSpark, Inc., et al.* (false IFP status and false case number during appeal transmission process, false "Closing Order Dismissing Case" in violation of 28 U.S.C. § 47 while an appeal of right was open and pending for decision: interference with jurisdiction and due process, *obstruction of justice*). U.S. Courts cannot ignore jurisdictional defects as they clearly have with despotic prejudice.

## V
## Common Law Malicious Prosecution and Abuse of Process

59. The allegations of the foregoing paragraphs are incorporated by reference herein.

60. Plaintiff was arrested for loitering when he did not even know that another person was present to alarm and arrested for theft of property that he did not intend to deprive or exercise control over except as an invited trustee. Both charges were dismissed with prejudice. Clearly also, there was express readable license to exclude possibility of trespass.

61. Plaintiff has been damaged by distress, legal fees, loss of reputation, and more. In all of this, Defendant(s) has acted in bad faith out of malice (stalking) and vindictiveness toward a *target for harm.*

## VI
## Common Law Defamation

62. The allegations of the foregoing paragraphs are incorporated by reference herein.

63. Defendant(s) by intentional orchestration of false light, caused Plaintiff's school, community, and genuine friends, romantic friends, and partners to become adverse when they were previously favorable to Plaintiff on true merit. Plaintiff had received an award for excellence in *Fundamentals of Law Practice*, but then a Boston Globe article about Donald Trump's rally in Derry, New Hampshire, featured public forum comments indicating detriment to my reputation in the community e.g. "Same Jeremy Southgate, UNH law student who was arrested last year?" and "I sure hope I never find him representing me in anything before a court."

64. Defendant(s) by intentional orchestration of false light, caused courts and the "mental health" apparatus of the state to be alarmed with respect to the Plaintiff in December 2024, and their actions have damaged and in no way helped Plaintiff's dignified existence as a

human being. It was taking without just compensation and deprivation of due process: *let the individual be. U.S. Declaration of Independence. The Bill of Rights, Human Rights.*

65. Defendant(s)'s unlawful, malicious campaign against Plaintiff is like that famously against Clarence Thomas, Brett Kavanaugh — it is plain and simple aggravated defamation against a *target for cancellation by character assassination, ex post facto rulemaking, and 'attainder of blood' against estate **against the laws and Constitution of the United States.***

## VII
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS

66. The allegations of the foregoing paragraphs are incorporated by reference herein.

### Plaintiff's Background

67. On September 30, 2010, at the University of Chicago School of Public Policy, I was trained in the role of Intelligence Analyst by the United States Central Intelligence Agency alongside the study of *American Civilization.* I have since studied the fields of computer science and law with honors, as well as completed graduate studies in political corruption, accounting, organizational behavior, etc.

### Inducement to UNH Franklin Pierce School of Law

68. Plaintiff Jeremy C. Southgate had been entreated to the law school in Concord, New Hampshire, because the law school advertised via electronic communications: "A World-Renowned Intellectual Property Law School." University of New Hampshire Franklin Pierce School of Law, https://law.unh.edu. UNH law school has obtained over $118,000 gross profit from Plaintiff's tuition and other substantive benefits from having had Jeremy Southgate as a scholar resident.[22] The admissions officer, who since departed, had e-mailed: ". . . impressed by your background."[23] Since then, it became apparent that they are self-dealing in breach of fiduciary duty and covenant of fair dealing. *See* ¶ 10 (footnote 4), 32, 44, 50 (footnote 16). If the UNH School of Law engaged in false pretenses to obtain Plaintiff's substantial tuition and credential trust for political gain: acting against Plaintiff so as to prevent gainful employment and harm his business enterprises, it is indictable as mail and wire fraud. 18 U.S.C. §§ 1341, 1343. Every "concern" e-mail from a purported

---

[22] UNH™ 90 Rumford St. residence was an acoustic amplifier instrument for invading privacy.

[23] In view of this complaint, I feel unease about Harvard Law School Dean Kristi Jobson writing "learning more about you" when declining my application. HLS's acceptance rate was 13% and my GRE reading comprehension was in the top 12%, I think I made the cut and have better things to do with my time than repeat sterile tests. Yet, UNH Franklin Pierce School of Law has business associations with Harvard Law School, e.g. through an interlocking dean Leah Plunkett.

dean and activist student social media is a pattern of conspiracy for that fraud. *Id.* The law school also knows the First Amendment and its contours, because it taught such to Plaintiff; therefore, it must have known that stifling Plaintiff's speech was an intentional Orwellian act of rule-breaking intimidation against Plaintiff to the detriment of his professional standing. 18 U.S.C. § 1513(e). UNH thus contributed to greater conspiracy. 18 U.S.C. § 1513(f).

Entrapment and Retaliation by Defendant Weston

69. On June 26, 2022, Defendant(s), namely, Kathrine Weston intentionally created an artifice of an entrapping porch scene in Concord and use of mail and implied interstate infrastructure to obtain political gain over Plaintiff's good name, reputation, and value. ¶¶ 12-18. This false record in the mail was intended to trigger false concern and induce deprivation of rights under color of law; as such, it is indictable as federal mail fraud. 18 U.S.C. § 1341.

70. On multiple days after June 26, 2022, knowing that she had baited and trapped Plaintiff, Defendant Kathrine Weston intentionally continued a "telephonically" wired and lettered campaign against Plaintiff against "his impressive 'resume' of schools attended, and accomplishments" which intones her intentional retaliation against a prior record of goodness: her letter dated August 5, 2022, and marked received and filed in court August 10, 2022, admits retaliation against the aforementioned record of goodness against which she wrongfully avers "only supports the need for the restraining order." Discrediting Jeremy's goodness was the object of conspiratorial hostility. 18 U.S.C. §§ 1341, 1343, 1962(d).

71. In reference to ¶¶ 69-70, Defendant Katherine Weston averred that Plaintiff's lawful employment as a scholar and livelihood with a future career of honor should be restrained and punished because of (a) recognition of the name "Kathrine Elizabeth . . . Weston" and (b) reasonable alarm that he was being digitally (e.g. NSA "smurfs") and physically stalked and (c) temporary possession of the mailpiece as necessary trustee for contemplation and reasonable discovery for potential referral to law enforcement of the oddly false representations and indicated hostile stalking actions of her and her's.

72. In reference to ¶¶ 69-71, Defendant(s), namely, Kathrine Weston knowingly and with intent to retaliate sought to harm Plaintiff with respect to Plaintiff's discovery of (a) Defendant(s)'s possible federal mail fraud offense on June 26, 2022, and (b) this in connection with Plaintiff's "accomplishments" including, on information and belief: alleging federal offenses in prior litigation i.e. *Southgate v. SoundSpark, Inc. et al.*, 14-cv-13861-ADB (D. Mass.) and *Southgate v. United States of America et al.*, 17-cv-1047-LO/MSN (E.D.Va\CIA), suggesting involvement of a judicially linked UNH classmate and thus UNH itself. Thus, Defendant(s) is indictable as retaliating against a witness, victim, and informant Plaintiff. *See* ¶ 17 (footnote 7). 18 U.S.C. § 1513(e). There is an unlawful conspiracy of retaliation. *See* ¶ 66. 18 U.S.C. § 1513(f). There is extraterritorial Federal jurisdiction over this offense. 18 U.S.C. § 1513(d).

18

Activist Coordination and Academic Retaliation

73. Caroline Flessa's frivolous application for criminal action against Plaintiff based on "a known record" that likely comprises (a) Plaintiff's prior litigation, ¶ 72, (b) Kathrine Weston's false accusations, ¶¶ 69-72, and (c) conspiracy with "activist friends" at UNH School of Law, ¶ 42. As such, Caroline's are indictable as unlawful retaliation against a witness and informant and as conspiracy to engage in racketeering. 18 U.S.C. § 1513 (e), (f).

74. Defendant UNH School of Law via students Ronelle Tshiela, AhLana Ames, Kat Welch and others who retaliated against Plaintiff Jeremy Southgate's First Amendment protected speech and press rights with intentionally frivolous "numerous reports" of alleged harassment are also unlawful retaliation against Plaintiff's "known record[,]" as a federal informant, statutorily authorized litigant, and public voice — in the past but also for the future as a potential attorney and independent Officer. *See* ¶ 42. Accordingly, UNH School of Law has aided and abetted or failed to prevent retaliation harm, indictable per se, or as conspiracy for criminally harmful racketeering. 18 U.S.C. § 1513 (e), (f). *See generally* crim. complaints.

Pattern of Racketeering Activity

75. In reference to ¶¶ 68-74, Defendant Kathrine Weston's (New Hampshire) mail fraud and retaliation and conspiracy under color of law, Caroline Flessa's (Massachusetts) retaliation and conspiracy, the Defendant UNH School of Law (New Hampshire) students activists' retaliation and conspiracy against Plaintiff's civil rights and efforts to do justice, *and more* (international) comprises a "pattern of racketeering activity" since at least as early as June 26, 2022. 18 U.S.C. § 1961 (1) and (5).

Enterprise

76. Through the pattern of racketeering activity referred to in ¶ 75, Defendant(s) acquired or maintained, directly or indirectly, an interest in an interstate conspiracy of niche women and viewpoint discrimination activists, and even a small, niche ABA "accredited" law school, under color of law falsely accusing "malicious acts against women" *to deprive a target man of all right. See e.g.* ¶¶ 33, 42-43. 18 U.S.C. § 1962(b). *See also* ABA Standard 205 (NON-DISCRIMINATION AND EQUALITY OF OPPORTUNITY). U.S. Const. amends. V, XIV.

77. In reference to ¶ 74, Defendant(s) and student activists, namely Women's Law Student Association ("WLSA"), Lambda (LGBTQ+++ activism), "Young Dem…s" affiliated with the law school at the University of New Hampshire/UNH Franklin Pierce School of Law who caused "numerous reports filed" concerning Plaintiff and who have coordinated through overt messaging, e-mail lists, and social media have conspired to harm the Plaintiff through the above referenced pattern of racketeering activity. *See e.g.* ¶¶ 41-43. 18 U.S.C. § 1962(d). *See also Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S.

181, 209, 143 S. Ct. 2141, 2163 (2023) ("'. . . discrimination for its own sake,' which 'the Constitution forbids.'").

## Damages

78. As a result of all of the foregoing, a solid meritorious track record from Harvard and 1L has been relegated to severe damages affecting Plaintiff's credit, finances, business obligations, professional reputation, bar eligibility, rights of human association, and more. The damages are immediately pressing and irreparable and have no adequate remedy at law — Justice delayed is Justice denied. In Equity and pursuant to the U.S. Constitution and International Law by U.S. convention: *MANDAMUS!*

79. Plaintiff would rather be composing and recording SoundSpark® music and inventing, instead of litigating against a racket of belligerent conspirators. Like for The Beatles, Plaintiff actually would like to make music and things that appeal to women and society as fans, customers, fellow citizens, Americans.

## VIII
## Common Law Unjust Enrichment (In Equity)

80. Plaintiff arrived at law school with "a genuine passion for the law. . . ." ¶ 8. The law school had complimented: ". . . impressed by your background." ¶ 68. For the first two years of law school (1L, 2L), Plaintiff continued a solid track record. ¶¶ 8, 50 (No failing grade in any final academic record in living memory.) and ¶ 63 (award for excellence in *Fundamentals of Law Practice*, "A" grades in legal specialties). Now, as a result of completing all ABA and educational requirements, having earned the title of Doctor of Law, Plaintiff holds an obligation of approximately $200,000 for the education and degree, but Defendant UNH School of Law, in breach of a covenant of good faith and fair dealing implied in every contract, have proven their default as to their obligations to Plaintiff as a customer and citizen exercising his rights as one of We the People to benefit and even profit from his learning, and so *independently* serve the "Progress of Science and useful Arts . . . ." U.S. Const. art. I, § 8, cl. 8. *See also* U.S. Decl. Ind. Plaintiff's reasonable expectation of *liberty to profit* from reasonably expected *property (the degree i.e. reputation)* was damaged by officials favoring their own via corrupt disparagement. U.S. Const. amends. V, XIV.

## IX
## Common Law Fraud and the New Hampshire Unfair Commercial Practices Act

81. Despite the origin of the title "Doctor" from the Greek/Latin "*doceo, docere, docui, doctum*" i.e. *to teach*, Defendant UNH School of Law's promoted political partisan published false declarations among students and ratified UNH School of Law's betrayal (in former times: petty treason) in declaring to the hardworking, intelligent Citizen: "Jeremy, You're not the teacher!" ¶ 42 (footnote 12). This *discriminatorily promoted* UNH student's declaration

received the color of law from the "official" UNH Franklin Pierce School of Law. ¶ 42 (footnote 13) ("this comment on the official UNH law Facebook page where your . . . view can be seen . . . ."). UNH School of Law has repeatedly promoted their select student activist students so as to discriminate against and harm Plaintiff. Thus, UNH School of Law has misrepresented that they would serve to make Plaintiff Jeremy C. Southgate a reputable teacher of law (Juris Doctor i.e. Doctor of Law) when they would in fact unmake Plaintiff "not the teacher" of law and not even, they corruptly imply to all, of sound mind. Accordingly, Defendant UNH School of Law violates N.H. R.S.A. § 358-A:2(VII) (". . . deceptive act or practice in the conduct of any trade or commerce . . . Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"). Defendant(s) owed an impartial, impersonal, undisparaged state degree.

82. "Defendant The University of New Hampshire offers Certified Electronic Diplomas (CeDiploma)" University of New Hampshire, https://www.unh.edu/registrar/graduation/certified-electronic-diploma (Accessed June 20, 2025). The UNH School of Law campus at 2 White St., Concord, see I, expressly reads "University of New Hampshire" School of Law. *Hence,* '(1) UNH [School of Law] made an "offer" of service. (2) Plaintiff accepted the offer via e-mail to the Registrar ("I hereby place an order for a CeDiploma, and I have paid . . . ."). (3) UNH School of Law was in receipt of the bargained for consideration of $14.95 for "Proof of education with only the important details. . . . providing greater trust and acceptance." — THERE IS A CONTRACT. — (4) UNH School of Law indicated that it breached the contract for service by refusing prompt performance and tendering bureaucratic evasion: "Thank you for reaching out. Unfortunately, . . . is currently a service that only . . . ." UNH School of Law's repudiation is not reasonable and against express Contract: it is obligated to place the order with the vendor. (5) Plaintiff is damaged by the lack of specific performance he reasonably expected AND the repeated motive and lack of mistake for the usurpations of due process at the University of New Hampshire Franklin Pierce School of Law. (6) If the dean of the law school can afford global travels, including recently to New York, San Diego, El Salvador, Asia (Beijing, Taipei), etc., then UNH School of Law can afford "administering the program of legal education of the law school" by delivering to the Plaintiff the promised "Proof of education with only the important details." ABA Standard 202(a). School marketing is no excuse for dereliction of legal education and its ultimate aim to certify facts of general competency to the Public. *Id. See also, again* N.H. R.S.A. § 358-A:2(VII). Plaintiff has damages in the nature of specific performance demanded for delivery of a CeDiploma.

## X
## Breach of Trust and Fiduciary Duty

83. Defendant(s) breached Trust implied among all Americans: ". . . we mutually pledge to each other our Lives, our Fortunes and our sacred Honor." U.S. Decl. Ind. "In God We Trust." Defendant(s) have sought to exclude Plaintiff from the benefits of the National Trust by their

corrupt practices. *Id. See also* U.S. Const. amends. V, XIV.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff seeks to have by his rights:

1.  A Declaratory Judgment in favor of Plaintiff:

    i.   Declare VIOLATION of Plaintiff's Civil Rights as protected by the entire Bill of Rights, U.S. Constitution;

    ii.  Declare the presumption of Plaintiff's actual innocence v. all prior alleged state crimes;

    iii. Declare and Certify that Plaintiff has no mental defect at law, that the application of Mass. Gen. Laws ch. 123 was unconstitutional as applied to Plaintiff, and that all Plaintiff's Civil Rights, including the right to bear arms, are fully in effect without undue encumbrance under color of law because the state actions are void as unconstitutional;

2.  Impoundment of all state court records (Massachusetts, New Hampshire) respecting Plaintiff into this federal District Court, and sealing of the same, by authority of All Writs and the supremacy clause of the U.S. Constitution, art. VI;

3.  An injunction or other writs in the nature of mandamus to correct the public and private records that wrongly defame the Plaintiff and prohibition against unfair, unlawful allegations of debt including but not limited to legal and medical bills, educational debt;

4.  Summonses into court of all other defendants whom, in the opinion of the Court, should face Justice, pursuant to the racketeering laws, 18 U.S.C. § 1965(b), and All Writs Act, 28 U.S.C. § 1651(a), if need be;

5.  Compensatory and punitive damages in an amount to be determined at trial;

6.  Referral of the Defendant(s) and/or attorneys for prosecution and/or discipline for false reports to to the state;

7.  Reasonable attorney's and expert's fees per 42 U.S.C. § 1988(b);

8.  Certification of Plaintiff's good character and fitness for present admission in the New Hampshire and Federal Bar;

9.  Declaration and Certification that Plaintiff already possesses a valid *license* to practice law (". . . in all courts of the United States, the parties *may* plead and manage their own causes

personally . . . .") by federal statute 28 U.S.C. § 1654, enacted by the First Judiciary Act of 1789, § 35 (*see also* N.H. R.S.A. ch. 311, § 1), and that, in general, public or professional disparagement of such right and direct or indirect relegation to an unequal or inferior esteem in court status despite high versus lower intelligence is a deprivation of rights in the Constitutional Order;

10. Such other and further relief as Justice may require.

*Certified to the Supreme Court of the United States pursuant to Rule 17 of that Court.*

Dated: June 26, 2025
Concord, New Hampshire

Respectfully,



HON. DR. JEREMY C. SOUTHGATE
*Scientific Juris Doctor, Plaintiff, Pro Se*
*Head of Spark*
T. +1.617.584.5219
E. jcs@law.soundspark.com
A. The Studio @ 24 Maynard Farm Circle
Sudbury, Massachusetts 01776

*with, by, and through his Attorney(s)*

---

Carmonelisa Pérez-Kudzma, Esq. ("C Flessa matters")

*Attorney to be Noticed for Plaintiff Dr. Jeremy C. Southgate*

U.S. Supreme Court Bar Admission  Yes ___✓___    No _____

Massachusetts Bar No.  *available upon request.*

New Hampshire Bar No. *available upon request.*

E.  attorney@pklaw.law

T.  781-209-5596

Law Office

Pérez-Kudzma Law Office, P.C.
35 Main St., Suite 1
Wayland, MA 01778

## Pérez-Kudzma Law Office, P.C.

35 Main Street

Suite 1

Wayland, MA 01778

attorney@pklaw.law

(781) 209-5596

## DEMAND FOR PUBLIC "FULL FAITH AND CREDIT" JURY TRIAL

Plaintiff Jeremy C. Southgate demands the right to a public trial by jury for all issues so triable.

Dated: June 26, 2025

/s/ Jeremy C. Southgate
Dr. Jeremy C. Southgate

## RESERVATION OF ALL RIGHTS IN GENERAL

*Plaintiff Jeremy C. Southgate reserves all his rights in general.* Plaintiff reserves right to amend this complaint or pursue any other action upon discovery or ripeness of any new claims.

Dated: June 26, 2025

/s/ Jeremy C. Southgate
Dr. Jeremy C. Southgate

## OATH TO THE UNITED STATES CONSTITUTION

I, Jeremy C. Southgate, do solemnly swear that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

Dated: June 26, 2025

/s/ Jeremy C. Southgate
Dr. Jeremy C. Southgate

25

## CERTIFICATE OF SERVICE

This Document will have been sent for delivery to

**DONALD J. TRUMP**
***47th PRESIDENT OF THE UNITED STATES OF AMERICA***
The White House
1600 Pennsylvania Ave NW
Washington, DC 20500

**UNITED NATIONS INTERNATIONAL COURT OF JUSTICE**
***In re SPARK STATE*** — NOTICE OF PROBABLE HUMAN RIGHTS JURISDICTION
Peace Palace
Carnegieplein 2
2517 KJ The Hague
The Netherlands

**UNITED STATES SENATE COMMITTEE ON THE JUDICIARY**
℅ Chairman Chuck Grassley, U.S. Senator Lindsay Graham
224 Dirksen Senate Office Building
Washington, DC 20510

**SUPREME COURT OF THE UNITED STATES**
***In re JEREMY C. SOUTHGATE*** — NOTICE OF PROBABLE U.S. CONST. JURISDICTION
Re: Case Nos. 16-8748, 18-8383
Attn: Amend. I Petition and Personal Application to the *Honorable Justice* Brett M. Kavanaugh
1 First Street, NE
Washington, DC 20543

**EXHIBIT 1**



*Top.* A photo Plaintiff created at 10:47pm on June 26, 2022, showing an illuminated Christmas tree in June in Concord near the Federal Courthouse and N. Spring St. *Right.* A map of Concord, NH, indicating the location where the photo occurred in the vicinity of the District Court and Federal St.

**EXHIBIT 2**



An image created by Chat GPT (Artificial Intelligence) that substantially conveys the impression perceived with respect to 44 N. Spring St. on the night of June 26, 2022.

*Prompt*: Make a rendering of this photo of a front porch with the following features: The Viewer goes up the front steps and is situated on the porch in front of the door with a fisheye view; and the Viewer can see the door on the left, the steps on the right, and an open space on the porch; and along the bottom baseboard of the porch wall adjacent to the street is a horizontally long wooden plaque sign that says "Welcome to our Porch" (less than a foot tall, about the height of a baseboard); and above the mailbox is a decorative wooden plaque sign that says "Liberty" on it; and in the center window is a ring security camera with a subtly glowing red light; and at the Viewer's feet, in the center of the standing area between steps and porch (remember this is a fisheye view) there are two teddy bear stuffed animals leaning against each other facing the door.

# EXHIBIT 3



A explanatory map drawn for my attorney Tom Reid, esq., in 2022.

**EXHIBIT 4**



44 N. Spring St. (front view) according to Google
Maps (August 2011, Accessed May 29, 2025).

**EXHIBIT 5**



44 N. Spring St. (side view) according to Google
Maps (August 2011, Accessed May 29, 2025),
showing that the porch is appurtenant to an
easement in gross for all citizens with respect to all
sidewalks in the City of Concord, New Hampshire.

**EXHIBIT 6**



The only photo I possess of 44 N. Spring St. on June 26/27, 2022,
because it is public White Pages information. It evidences
recognizable name KATHRINE ELIZABETH from WESTON
and LIBERTY as Plaintiff's substantive due process.

**EXHIBIT 7**

2160-OMFH-JRED



# HARVARD UNIVERSITY

### AT CAMBRIDGE IN THE COMMONWEALTH OF MASSACHUSETTS



THE President and Fellows of Harvard College, with the consent of the Honorable and Reverend the Board of Overseers and acting on the recommendation of the Faculty of Arts and Sciences, have conferred on

### JEREMY CHRISTOPHER SOUTHGATE

the degree of Bachelor of Liberal Arts in Extension Studies cum laude.

In witness whereof, *by authority duly committed to us, we have hereunder placed our names and the seal of the University on this tenth day of November in the Year of Our Lord two thousand and twenty and of Harvard College the three hundred and eighty-fifth.*

*PRESIDENT*

*DEAN OF CONTINUING EDUCATION*
*AND UNIVERSITY EXTENSION*

*EDGERLEY FAMILY DEAN*
*OF THE FACULTY OF ARTS AND SCIENCES*

EXHIBIT

 Outlook

---

**Congrats & General Info**

---

**From** Law Registrar's Office <law.registrars@send.unh.edu>
**Date** Wed 5/21/2025 6:00 PM
**To** Jeremy Southgate <Jeremy.Southgate@law.unh.edu>

You don't often get email from law.registrars@send.unh.edu. Learn why this is important

logo for the Franklin Pierce School of Law

Good Afternoon Jeremy,

Congratulations on graduating with your Juris Doctor degree. We hope you all got to enjoy this amazing achievement with family and friends.

Please know that while you are now alumni we are still here to assist in any way we can.

- For career counseling please visit the Alumni Services section of the Career and Academic Advising Office website.
- For assistance with Bar prep please reach out to Academic Success.
- Transcript requests can be made through our third party vendor Parchment.
- Bar application forms should be sent via email to our office at Law.Registrar@law.unh.edu.

For all of those who were unable to attend commencement please reach out to our office to verify your mailing address. We will begin mailing diplomas this week.

Thank you and congratulations again!

Regards,

Office of the Registrar

Franklin Pierce Law on facebook   Franklin Pierce Law on twitter   Franklin Pierce Law on youtube   Franklin Pierce Law on instagram   Franklin Pierce Law on linkedin

Franklin Pierce School of Law   2 White Street   Concord, NH 03301
(603) 228-1541 • TTY Users: 7-1-1 or 800-735-2964 (Relay NH)

USNH Privacy Policies • USNH Terms of Use • ADA Acknowledgement • Copyright © 2025

Please do not reply to this message. Replies to this message are routed to an unmonitored mailbox